Good morning, Your Honors. May I reserve two minutes for rebuttal? You know, keep an eye on that clock in front of you. Whatever's left is yours. Yes, Your Honor. Thank you. May it please the Court, my name is Joshua Bardivet for Petitioner, Mr. Dong. May. The record provides three independent bases, each which independently provides a reason to remand the case. Cumulatively, it compels a remand. The first is that the immigration judge in the Board of Immigration Appeals failed to properly consider Mr. Dong's well-founded fear of future persecution. The second is that the negative credibility determination was unsupported by the record. And the third is that the immigration judge failed to consider the corroborative material provided by Mr. Dong, even assuming that his testimony was not credible, which independently established his claim. I would like to start with the failure to consider the well-founded fear of future persecution, which I believe provides... Does that hinge on the second and third? I mean, it's really not independent. If you believe the story, respectfully no, Your Honor, because an individual can establish asylum, eligibility for asylum, in under two ways. First is to establish past persecution, which gives rise to a presumption of a well-founded fear. But the second is even independent of past persecution. But if he's got a negative credibility finding, it just casts into question everything that he said. Except the immigration judge on page 134 of the record explicitly found the testimony of Mr. Dong's pastor to be credible. And the immigration judge explicitly accepted the fact that Mr. Dong is a practicing Christian, that he was baptized here in the United States, and that he attends church every single week. So that's all? He's a Christian? Correct, Your Honor. But again, we're back to what Judge Bimey asked you, with a bad credibility finding as to what he testified in the court. Why do we need to even discuss future? Because whatever he said or didn't say about future is not credible. Assuming that his claim of past persecution... There is nothing here. There's no independent evidence that's independent of his testimony, which helps him. There's nothing that is in this record to help him other than his own testimony. And he's already incredible. So that's why I think Judge Kaczynski's question is pretty important. We better go to the credibility to determine what to do. Now, if we go to the credibility, you realize this is a Real ID Act, right? Yes, sir. And with the Real ID Act, if you have a minor inconsistency, it's enough, right? Yes, sir. It doesn't have to be anything but minor. If we weren't in the Real ID Act, it would be different. I absolutely agree, yes, Your Honor. So why don't you explain how we can get by that stuff with the baton? Well, any inconsistency alleged must still be grounded in the record. And the point is that the inconsistency alleged by the immigration judge, in fact, didn't exist. The immigration judge can't mischaracterize testimony under the Real ID Act. In fact, the Real ID Act 1158 explicitly requires the immigration judge... He's got pretty clear evidence of an inconsistency as to the nature of the baton that was used by the police against your client. I respectfully disagree. What the immigration judge found was the fact that in the immigration judge's characterization, that in his written testimony, in his written statement, he indicated he was shocked by an electrical baton. He never stated that he was shocked by an electrical baton. He merely stated in the written translation of his written statement that it was characterized as an electric baton, but never said that he was shocked. And this is very important, and in fact... Your Honor, I'll suggest you edit. Dahl never even suggested that there was any translation error when he was confronted. And he initially denied even writing that there was an electric baton. And after they had a continued hearing, he went back to the Internet and read what it said. And at that point, he tried to change it and say, yeah, it was an electrical baton. But again... That, to me, is absolute inconsistency and not minor, because now we're really talking about the extent of his injuries. But the key and the error below is not that it was just merely a difference between being struck by a baton or an electrical baton. It was that the immigration judge characterized it and explicitly said that Mr. Dong claimed he was shocked by the electrical baton. He never once, in his written statement, in his statement when he arrived at the United States, the border interview, during his credible fear interview, during his testimony... So you're suggesting he can say it was an electric baton and that wasn't the way it was, but thereafter go look at the Internet and come back and say, no, I made a mistake, it was an electrical baton. And that's not a minor inconsistency. But that's not what the immigration judge found, again. Now, just a minute. That's exactly what your client did. I would respectfully... In my book, that's exactly what the I.J. was talking about. But that's not what the I.J. said, Your Honor, and I don't think that my client knew... We have the I.J.'s note in the file here, if you want to point us to specific language. The specific language is on page 120 of the record, where the immigration judge explicitly says, if Mr. Dong had in fact been shocked with an electrical baton, this would have been a notable aspect of his persecution. Thus, the court finds the use of the word electrical baton significant. He didn't say that Dong said he was shocked. What you just read us said if he had been shocked, this would have been a substantial step in proving and finding his burden. And I believe that the use of the condition by the immigration judge is to cast doubt on Mr. Dong's claim that he was shocked, but in fact he never claimed that. But where did the I.J. say that Dong said he was shocked? We were brought on that quote where he's saying if he were actually shocked, this would be significant. But that's not a finding that Dong said he was shocked. I believe it is a finding, respectfully, Your Honor, that it is a finding that Mr. Dong actually claimed to have been shocked, and that's why he's casting doubt on his testimony. And I would also note a couple of other points. Let me make sure I understand it. Your position, you read the I.J.'s decision as having attributed to your client a claim that he was shocked. Yes, Your Honor. Okay. Now, we may or may not agree with that. If we disagree with that, if we think that, in fact, I.J. does not attribute that to your client, he nevertheless says, I see a difference between an electric baton and a regular baton. Do you take issue with that? I would still assert that there are sufficient grounds to remand, even if the court disagrees with my interpretation of the immigration judge's decision. So the theory that if you get hit on the head, it doesn't matter whether the instrument is capable of shocking as well? Precisely, Your Honor. And the other point is, as was raised earlier, that we're not just relying on his testimony. So even if we can say that there are minor inconsistencies that require rehabilitation, the key is that there was independent evidence admitted into evidence, not objected to by the government, that the immigration didn't consider. And most importantly, the contemporaneous medical records, which detail from the doctor that he went to after he was mistreated by the police, where the doctor himself reports what Mr. Don was indicating, which is that he reported to the doctor that he was beaten with a baton. The doctor reported multiple contusions all over his body, dry blood on his body, dry blood on his clothing. This was independent, contemporaneous corroborative material that matches with what Mr. Don was describing in his testimony. And the immigration judge's failure to consider that independent evidence literally doesn't even make a mention of this evidence, other than saying, I've considered all of the evidence. And while as a general rule, an immigration judge is not required to parse through every piece of evidence, where this very specific, unobjected to, admitted evidence was not even mentioned, discussed, or in any way reconciled with the immigration judge's finding on that basis alone, even if we have lingering doubts about whether or not Mr. Don was inconsistent, the question then remains as to whether this independent evidence rehabilitates otherwise apparently inconsistent testimony. Okay, we've taken you down to one minute, but maybe you ought to speak to monitoring, because I think monitoring is an equally tough one for you. Yes, sir. Did you have a specific question you just wanted to talk about? No, I just, I mean, I've read your argument, but I don't know how that really helps you. I mean, my book, I'm just trying to let you explain, because in my book, there's an inconsistency that's pretty relevant. Don appeared to simply embellish his claim on the spot. This was progression. It proves by substantial evidence that there's an adverse credibility finding. There's nothing to prohibit an asylum applicant to expand upon his written statement. Well, there's nothing to prevent that he expands, but if it has nothing to do with what really happened, then you can make it an adverse credibility finding, and when it's minor inconsistency, there we are. And I would respectfully assert that, first, because the immigration judge said the most significant factor was the electrical baton issue and the evidence corroborates his claim, that if we eliminate that, if we scrub that error from the judge's finding, we don't know whether or not the monitoring issue would be sufficient for negative credibility determination. And secondly, I would just state with respect to that issue, Your Honor, that this is not an inconsistency. Yes, this was something. Mr. Bennett, I don't believe you can say that the IJ found odd the progression from simply being asked what he was doing to being threatened by the same officer that beat him previously and noted that Don appeared simply embellishing his claim. That's a little bit better than passing it by. Yes, Your Honor, but the, first of all, in his statement he says he was monitored and harassed by the officials, and I would also note that Mr. Don's mother's letter indicates that he was, in fact, followed and harassed and bothered by the officials, and they're vague references, and absolutely I am not going to stand here and claim that they provided, that this specific detail that he did provide during his testimony, the record doesn't reflect that, but what it does reflect is he provided vague general details about this monitoring and then elaborated on those details when he was given the opportunity to testify in detail. Thank you. Thank you, Your Honors. Good morning, Your Honors. May it please the Court, Alexander Luce, the respondent. Your Honors, this record would not compel any reasonable fact finder to conclude that Mr. Don provided credible testimony for reasons that Your Honors have already touched on in your questioning of Petitioner's Counsel. We've got an inconsistency about the baton versus electric baton, which is the Well, are you taking the position that Mr. Don claimed he was shocked by the baton? Your Honor, I don't think Mr. Don necessarily said he was shocked by the baton. We read the language that Mr. Don's counsel just addressed on page 120 of the record as saying that this is a significant inconsistency because if he had been shocked, he would remember that that would be a significant detail of his story. But he doesn't seem to have been shocked, so I'm not sure why it matters if you get hit over the head, whether you get hit over the head by an ignorant baton or an electric baton. I mean, you know, it's not the kind of detail that you would necessarily remember. The officer's carrying something and hits you over the head with it. If you get shocked, then you would say, well, you know, it was an electric baton, but I don't quite understand why this matters, why the particular— I guess there's no words in Chinese for baton, electric baton. Is that what I gathered from the— Your Honor, the record does contain evidence from a sworn immigration court interpreter who said there was no ambiguity as to Mr. Don's use of the word electrical. But in response to the general— Well, no, I understand. I was just asking. I gather there are different words in Chinese for a regular baton, electric baton. It's not like English where you have to add a modified baton and call it electric baton. It's just different words for the— So it's not like you have to add a word and say, oh, it was an electric baton. What I gather is that different words, and he used one of the words, another word, and I'm not sure what significance there is, whether it was electric or it wasn't electric, or whether we know whether it was electric or not. The consequence was that he was hit over the head, or that's what he claims. Well, Your Honor, I suppose I'd make two points in response to your question. The first is that the immigration judge's finding to do with the electrical baton as adopted by the court didn't just have to do with the basic distinction between two different implements. It had to do with Mr. Dong's shifting, conflicting explanation for that inconsistency. When the immigration judge noted this point, Mr. Dong testified that he did write electrical, that he didn't write electrical, that he didn't know whether the baton was electrical because he didn't see it, that he put electrical because he thought they were the same thing, and that he put electrical because his computer prompted him to do it when he was writing the declaration. That's part of the immigration judge's finding on this issue, and that's part of the finding the court adopted. But even if we set all that aside, we've still got the entire separate inconsistency where Mr. Dong added in his cross-examination testimony an entirely new claim about being threatened face-to-face with death in an alley by a Chinese police officer, and that claim was completely absent from his written submissions. Well, but then what about a doctor's evidence that he came in bloodied and bruised and told the story about being hit with a baton? Well, Your Honor, we would respectfully suggest that that's not enough to corroborate Mr. Dong's testimony. Actually, it doesn't even mention it. It's sort of like not there. It seems pretty significant, doesn't it? I mean, there's a third party who provides evidence. In fact, he comes in bloodied. You know, what's the idea here, that he sort of fell down the stairs? Well, Your Honor, I guess I suppose there's two issues that your question touches on. One is the significance of this document, and the other has to do with the point Mr. Dong is making now about whether the agency sufficiently dealt with the document. So as to the first point, I'd point out that this hospital report just shows that he was beaten, that he has injuries consistent with being beaten, that alone doesn't corroborate the whole scope of Mr. Dong's claim that he was a member of an underground house church, was detained on that basis, and was beaten and forced to write a confession letter. It has nothing to do at all with the second and third instances of persecution that he alleges. As to whether the agency erred in its treatment of this evidence, we would respectfully submit that the record does not compel that conclusion. Mr. Dong's counsel just a few moments ago conceded that the agency is not required to specifically step through each item of evidence and explain how much weight it gave to it. This court said that in Daly, which is a case we cited in our brief. Well, but the IJ essentially seems to have concluded that Mr. Dong fabricated the incident about being hit on the head. It seems to me that a piece of evidence shows that he is in the hospital, and he's bloodied, and that he talks about being hit. I mean, that strikes me as pretty significant stuff. To just, you know, I mean, it's not just, I mean, I have no idea what the IJ thought. Was her report fake? Was her report, I don't know, it's a little hard to understand. Well, Your Honor, we would respectfully suggest that the agency didn't ignore this evidence. They just declined to specifically mention it in their decisions as they were going through several items of evidence. Well, how do you explain it? I mean, he has a hospital report that he comes in bloody and so on, right? And it seems to me it makes it less likely that he's lying about being hit with a baton and blues. If at the same time, on the same day, he comes in the hospital with a, well, it makes the question of whether it's an electric baton or a regular baton seem sort of trivial by comparison. Well, Your Honor, I'd just circle back to my earlier comment that this document alone just shows that Mr. Dong may have been beaten. It doesn't support his entire claim. I mean, it's more than just having been beaten to show a, uh... As soon as the CIA squad, he got into a fight in a bar and decided to then use it as an excuse to say that it was the police. I mean, I don't understand what you're saying. And as you're right there on the spot, when he walks into the hospital, he tells them one story, which he sort of concocted, anticipating he would get asylum, he would seek asylum in the United States. Well, Your Honor, I don't think we need to go that far. I think the only... No, I'm going to make him go that far. Yeah, well, that's certainly... Yeah, I know you don't want to go there, but nevertheless, what's your answer to my question? I mean, what are the, you know... So, you know, he gets into a fight in a bar and decides, oh, boy, this is a good chance for me to go to a hospital, claim to be harassed by the police, so that I can raise this immigration case, many years later, in the United States, and claim persecution. Is that the theory? Is that what you're talking about? No, Your Honor, that's not my position. The facts and the record wouldn't support that. Our point is just... You think the piece of evidence is fabricated? No, Your Honor, we're not necessarily saying that either. Our point is just that this item of evidence alone would not... It's not a diesel board, necessarily. It's one of the things you must have done in law school. Are you saying it is? Are you saying it isn't? I mean, what is the government's position? You know, he has a piece of evidence that he was, in fact, treated for what seemed to be injuries as a result of a beating. There has to be some explanation. I mean, what's the government's position as to that? Is that fabricated? If it's not fabricated, how does it fit into the story? Your Honor, I don't have a position on whether the document was fabricated or not, because the issue before this court is whether this record would compel any reasonable fact finder to conclude that Mr. Dong testified credibly or sufficiently corroborated his claim, such that he made out a claim for asylum. And this one document does not carry that burden, even if we set this whole issue aside about whether he was beaten or not and with what implement, we still have the inconsistency. I'm sorry, when you say set it aside, you can't just set it aside. You know, you can set it aside and say, well, believe him. He was, in fact, beaten by the police. You don't have to do that. That's fine. But you can't just, so to speak, ignore it and say it doesn't exist. Certainly, I understand Your Honor's point. No, so are you willing to say, okay, even assuming that he, in fact, was beaten by the police, he reports, it doesn't matter? Is that what you're willing to say? No, Your Honor, what we're saying is that even if this document were true... then the IJ's conclusion would not be supported by it. No, Your Honor, I didn't say that. Okay, so let's assume then that it is true. In fact, he was, in fact, beaten by the police, because you're not willing to assume otherwise. So let's assume that, in fact, it happens according to the argument. So this is a guy who gets beaten by the police on an alley, comes to the hospital, and says, I'm glad he didn't lose, and says, I've been beaten by the police. Well, Your Honor, I... Go, go, take it from there. Well, Your Honor, if it pleases the Court, I feel that I must clarify a couple of points about what the record actually states. Like you said, now, you know, I'm not trying to stay in position. You can't set it aside, you can't ignore it. You must either assume it happened, or assume it didn't happen. So which one do you want to assume? Because you say, even without this, he loses. Okay? So if you want to make that kind of argument, even without this answer, even if we ignore this problem, he loses, we have to make some assumption about what it is. So the only way you can go on to your argument that he loses anyway is by assuming that this one, he wins on this one. Okay, are you making the argument that even when you assume that he wins on this one, the IJs find the support? Your Honor, I'm not making precisely that point, and I feel I must clarify what the document actually says in order for my position to make sense. What, do you remember you said even if? So you are taking back the even if? Respectfully, no, Your Honor. I just want to clarify what this document says. The document says that Mr. Dong had injuries consistent with having been beaten. The document is dated July 15, 2009, and says he claimed to have been beaten two days before that. So the reason I wanted to clarify that is that Your Honor's question suggested this document related to the incident where he claimed to have been beaten in an alley. That's not what the document says. The document arguably pertains to the first incident where he claims he was detained and beaten. And all it shows is that at some time, roughly consistent. So this is not the Bataan incident? It is the Bataan incident, but that's a separate incident, so it's three incidents total. The first one is where he claims to have been detained while attending the first house church of which he claims to have been a member. He was taken into detention for three days, and during that detention was beaten with either a baton or electric baton. We don't know because he was inconsistent on that point. The second incident is the one that he revealed for the first time in his testimony and on cross-examination, and had never mentioned before in any submissions or direct testimony. In that incident, he claimed that he was confronted in an alley by one of the police officers who had previously beat him in the first incident, and that that police officer grabbed him by the collar, threatened him with a baton, and said, if I catch you attending house church again, I'll beat you to death. So that's the second incident. That's the one that appears for the first time on cross-examination. And in the third incident, months later, he's joined a second house church, he claims. He's handing out pamphlets in the street with two members of that congregation. The police see him from a little ways away in the street and publicly shout, stop right there or we'll beat you to death. And he flees into hiding with his aunts and ultimately winds up journeying to the United States. The document that Your Honor is talking about is a hospital report that says that sometime roughly consistent with that first incident, he checked into a hospital and showed symptoms that were consistent with having been beaten and claimed he was beaten two days earlier. And that's all that document says. So this is my point. If we accept that document is true, all it does is show that he was beaten around that time as his claim of this first incident. But just that point, just that fact alone wouldn't compel a reasonable fact finder to reverse the agency's decision here. Partly because the document doesn't go far enough to corroborate his claim. It doesn't say anything about his religion, about attending a house church, about his story about being forced to write a repentance letter. Well, it does corroborate the aspect of the story that says that he was beaten by the police. In the sense that he comes in with bruises consistent with being beaten. It doesn't mention the police, Your Honor, but Your Honor is correct that it does suggest that he was beaten. And my point is twofold. First, You don't think this is something that the IJ may have to deal with? I think the IJ did deal with it, Your Honor. I think the IJ said he considered all the evidence and that's all that's required. And I think the board adopted the immigration judge's findings, which were reasonable. I'd also point out that Mr. Dong didn't raise that item of evidence to the board. He did say to the board that the immigration judge had failed to consider all the evidence, but the only evidence he told the board to look at when he made that assertion, and I'm referring here to pages 91 to 92. It's okay for the IJ to say, I considered all the evidence, but it's not okay for Mr. Dong to raise it in the same way. He needs to be more specific than the IJ. Well, Your Honor, yes, I think he does. Because there's precedent from this court that says that the agency is presumed to have considered all the evidence, especially when the agency says, I've considered all the evidence, which is what the agency did here. Mr. Dong told the board that the immigration judge hadn't considered all the evidence, but what he asked the board to look at was the fact that he had an injury on his arm. Thank you. You're welcome, Your Honor. Thank you, Your Honors. You know, I was telling Mr. Weld, would you like a minute to move on? Very briefly, Your Honors. With respect to the medical report not specifying that he was beaten by the police, rather just simply he came in and indicated that he was beaten two days before, that's why another piece of evidence that was not mentioned by the immigration judge is also so key, and that's on page 487 and 488, which is the bail receipt from administrative detention, reflecting dates that match the medical report, reflecting the testimony, reflecting the testimony. There's a bail receipt from administrative detention on page 487 and 488, which we also highlight in our brief that the immigration judge failed to consider. You said bail, is it? Yes. Mr. Dong testified that he was arrested. Exactly. That's what he testified to and wrote that he was required to pay this fine in order to be released from administrative detention, and this receipt was not in any way discussed or mentioned by the agency as we raised in our brief, and when you combine these two pieces of evidence, we're not asking this court to reach a determination that, in fact, Mr. Dong met his burden of proof. What we're asking for from this court is simply a finding that the agency needs to reconcile its negative credibility determination with these key pieces of evidence, and without it, we don't have a complete agency decision on which debate to review because the agency is required to consider the set of values. Thank you very much.
judges: Kozinski, Bybee, N.R. Smith